

# IN THE 5TH JUDICIAL CIRCUIT, BUCHANAN COUNTY, MISSOURI

RECEIVED

SEP 08 2020

COLE COUNTY
SHERIFF'S OFFICE

2020 SEP

(Date File Stamp)

| Judge or Division:<br>DANIEL F KELLOGG | Case Number: 20BU-CV03105 |
|---|---|
| Plaintiff/Petitioner:<br>J BENNETT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ROBIN ANNE KOOGLER<br>304 SE CHELSEA PL<br>LEES SUMMIT, MO 64063 |
| Defendant/Respondent:<br>SEALED AIR CRYOVAC, INC. | Court Address:<br>BUCHANAN CO COURTHOUSE<br>411 JULES ST |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | SAINT JOSEPH, MO 64501<br>STATUS REVIEW HEARING DATE:11-23-20<br>@ 8:30AM, DIV 4 |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: SEALED AIR CRYOVAC, INC.<br>Alias: | |
| 2313 SW LOWER LAKE ROAD<br>ST. JOSEPH, MO 64504 | SERVE: CSC LAWYERS INCORPORATING<br>SERVICE, 221 BOLIVAR STREET,<br>JEFFERSON CITY, MO 65101 |

**COURT SEAL OF**

COURT OF MISSOURI

**BUCHANAN COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_Monday, August 24, 2020_      /s/K. DOBOSZ, Deputy Clerk
      Date                             Clerk

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____ , a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: CSC Lawyers , S.L. (name) designee (title).

☐ other: _____

Served at 350 E. High (address)

in Cole (County/City of St.JOSEPH), MO, on 09-09-2020 (date) at 800Am (time).

Sheriff, John P Wheeler by St Aimee Wray
   Printed Name of Sheriff or Server                      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

                  Date                         Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

#5039 $30.00

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* Document Id # 20-SMCC-491     1 of 1     Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 5:20-cv-06145-DGK    Document 1-2    Filed 10/07/20    Page 1 of 28



# IN THE 5TH JUDICIAL CIRCUIT, BUCHANAN COUNTY, MISSOURI

| Judge or Division:<br>DANIEL F KELLOGG | Case Number:  20BU-CV03105 |
|---|---|
| Plaintiff/Petitioner:<br>J BENNETT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ROBIN ANNE KOOGLER<br>304 SE CHELSEA PL<br>LEES SUMMIT, MO  64063 |
| Defendant/Respondent:<br> SEALED AIR CRYOVAC, INC. | Court Address:<br>BUCHANAN CO COURTHOUSE |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | 411 JULES ST<br>SAINT JOSEPH, MO  64501<br>**STATUS REVIEW HEARING DATE:11-23-20<br>@ 8:30AM, DIV 4** |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  **SEALED AIR CRYOVAC, INC.**
**Alias:**

**2313 SW LOWER LAKE ROAD<br>ST. JOSEPH, MO  64504**

SERVE: CSC LAWYERS INCORPORATING
SERVICE, 221 BOLIVAR STREET,
JEFFERSON CITY, MO 65101

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**BUCHANAN COUNTY**

| ___*Monday, August 24, 2020*___<br>Date | ___*/s/K. DOBOSZ, Deputy Clerk*___<br>Clerk |
|---|---|

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St.JOSEPH), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server                        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____        _____
                                          Date                                          Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

**IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**

| | | |
|---|---|---|
| **J. BENNETT** | ) | |
| 1301 ½ Felix St. | ) | |
| Saint Joseph, MO 64501 | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **SEALED AIR CRYOVAC, INC.** | ) | |
| **A/K/A CRYOVAC, INC.** | ) | |
| 2313 SW Lower Lake Rd. | ) | |
| Saint Joseph, MO 64504 | ) | |
| | ) | |
| Serve:  CSC Lawyers Incorporating Service | ) | |
| **221 Bolivar Street** | ) | |
| **Jefferson City, MO  65101** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**PETITION**</u>

**I. Preliminary Statement**

1.      COMES NOW, Plaintiff, J. Bennett, by and through her attorneys of record, Kevin Baldwin, Eric Vernon, Sylvia Hernandez and Robin Koogler of  Baldwin & Vernon, and brings this cause of action against Defendant Sealed Air Cryovac, Inc. a/k/a Sealed Air., hereinafter referred to as "Defendant Company." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and costs and attorneys' fees in accordance with R.S.M.o §213 *et. seq*., and under Missouri Common Law for Defendant Company's conduct and actions taken against Plaintiff.

**II. Jurisdiction**

2.     Plaintiff is alleging claims of employment discrimination and retaliation under the Missouri Human Rights Act (MHRA), 213.010, *et seq*., R.S.MO., for discrimination based upon her race, sex/gender, hostile work environment, disability/perceived, and retaliation.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

3.   Jurisdiction is invoked pursuant to §213.010 *et seq*. R.S.MO.  Plaintiff's original charge of discrimination filed with the Equal Employment Opportunity Commission and the MCHR, is attached hereto as exhibit 1 and the facts and circumstances stated therein are hereby incorporated as if fully set forth herein.

4.   The Plaintiff, based upon reasonable belief at this time absent discovery, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive and equitable relief, as well as punitive damages, pursuant to §213.010 *et seq*. R.S.MO.  Costs and attorneys' fees may be awarded pursuant to §213.010 *et seq*. R.S.MO. and are requested by Plaintiff.

**III. Venue**

5.   This action properly lies in the Circuit Court of Buchanan County, Missouri, pursuant to §213.010 *et seq*. R.S.MO., because the claim arose in this judicial district, and because unlawful employment practices were committed in this judicial district.

**IV. Parties**

6.   Plaintiff is a resident of the United States residing at 1301 ½ Felix St. Saint Joseph, MO 64501.

7.   Defendant Sealed Air Cryovac, Inc. a/k/a Sealed Air, hereinafter referred as "Defendant Company," is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 15 regular employees. Defendant Company is a corporation, (containing within its charter the requisite authority to sue and be sued), and does business in this judicial district, doing business at various locations located within Buchanan County, Missouri, at relevant times referred to herein, and specifically at 2313 SW Lower Lake Rd. Saint Joseph, MO 64504. Defendant Company is an employer within the meaning of §213.010, *et seq*., R.S.MO. Defendant

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Company is subject to the MHRA's prohibition on employment discrimination and retaliation for its employees.

8. Prior to filing this Petition for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights to no avail and exhausted all required administrative procedures prior to filing this Petition for Damages.

**V. Facts Common to All Counts**

9. Plaintiff, J. Bennett, is an African American female, who worked for Sealed Air Cryovac, Inc. a/k/a Sealed Air ("Defendant Company") for approximately 2 years.

10. Plaintiff was subjected to discrimination based on her race and sex and was retaliated against after making complaints of discrimination.

11. On or about January 12, 2018, Plaintiff walked into Defendant Company as a temporary employee.

12. Plaintiff was the only African American in the plant.

13. As soon as Plaintiff started, her male co-workers let Plaintiff know to stay away from all of the white women and to just do whatever the Defendant Company asked her to do.

14. Also on Plaintiff' first day, Kevin James took Plaintiff to her job location. In her job location there was a cart, and Kevin let Plaintiff know that roll pushing was an easy job and that she shouldn't have any problems.

15. Later that day, Kevin told Plaintiff that they only trusted her and asked her to work overtime the next day.

16. Plaintiff told him she could not work overtime because she was working two jobs, so Kevin tried to convince her to quit her second job at Triumph.

17. On or about March 21, 2018, Russell Ray from the training department went up to Plaintiff and asked if she was ready to go to reroll on the same shift so that she could become a full-time employee.

18. Plaintiff said yes and was told that she had to train a person to take her previous roll pushing job.

19. Plaintiff trained a male named Bryson and later a female named Iesha Smith.

20. On or about March 26, 2018, Iesha came to Plaintiff and told her that Russell Ray told her to notify Plaintiff that she had to go to C shift (nights) reroll but has to continue being a roll pusher until another temp starts and that Iesha is going to be B shift reroll.

21. Plaintiff then went to Kevin James and told him she needed to talk to Russell, because he just had a meeting with Iesha and then sent her to tell Plaintiff her information instead of speaking with her directly.

22. Kevin walked Plaintiff over to Russell Ray and as they walked, Plaintiff asked Kevin, "why do we both need to do reroll, why can't one do reroll, and one do reroll and one do roundcast assistance since we were already roll pushers?"'

23. Kevin said he requested both to do reroll since it's a little easier (because they are both female).

24. Plaintiff then talked to Russell Ray and he said management are the ones who picked who moves first.

25. Plaintiff asked Russell why he wouldn't be first since she's been there the longest and that two positions are open so why couldn't they both be moved.

26. Russell Ray figured it out and Plaintiff got B shift reroll and Iesha got A shift.

4

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

27. On or about March 30, 2018, Kevin James took Plaintiff out of her training to go to packaging even though Plaintiff wasn't qualified and had never done it before.

28. Plaintiff tried telling Kevin, but he just wouldn't listen. Kevin just commanded Plaintiff to help with packaging, when she had just started training on reroll.

29. Plaintiff then ran into Jeremiah who told her to go back to reroll because she was not supposed to touch anything that she is not qualified on.

30. After that, Kevin approached Plaintiff and said that she needed to make sure she stayed in reroll because Cheryl needed help.

31. On or about July 6, 2018, Kevin James gave Plaintiff and Cheryl Hill a summary worksheet and said that they needed to fill it out every day, yet they were the only ones given this assignment.

32. On or about July 6, 2018, Kevin James stated to Jeremiah Vassar, "they don't bust their asses," talking about Cheryl and Plaintiff.

33. On or about July 8, 2018, Plaintiff volunteered to work overtime for six hours on Tuesday, July 10th from 7AM to 1PM, then Kevin James went in and changed it to a mandatory 12-hour overtime.

34. On or about July 12, 2018, Bobbie Panning went to reroll demanding that they do all her rerolls as soon as possible, so Plaintiff sat her rolls on the pallet like procedure because Plaintiff was already rolling a roll.

35. Plaintiff went to break and went back, and Bobbie was rolling her roll.

36. Bobbie then called for Kevin James and Brock Jophlin (VSOL), who she was having an affair with, over the intercom to see where they were at.

37. Shortly after that, Cheryl and Plaintiff got called to the office and there sat Kevin and Brock.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

38. Kevin James stated 8 things that Plaintiff and Cheryl needed to do: hit numbers, take 3 breaks, do the turnover at the line, no operators from other lines can roll their rolls, have a roll rolling by 7:30AM, do turnover by 7:00PM, and stated that they couldn't help each other with rolls off the line.

39. This list of duties was only applied to Plaintiff and Cheryl.

40. On or about July 20, 2018, Bobbie had walked past reroll and seen Plaintiff scraping a roll.

41. Two minutes later, Kevin James and Bobby Panning went by and Kevin yelled at Plaintiff for scraping Bobbie's roll.

42. Plaintiff let Kevin know that he needed to investigate what was going on before just listening to Bobbie and approaching Plaintiff with attitude.

43. On or about July 20, 2018, Darla Perks (safety) and Anthony Burnside (quality) did a BBS audit on reroll where Plaintiff worked.

44. Darla removed Plaintiff's water from the machine and said, "your water can't be there," but then turned to Cheryl and said, "yours is fine," which was also sitting on the machine.

45. On or about August 10, 2018, Cheryl quit because they would not give her a full-time job.

46. Around that time, Bobby Panning got a quality office job because of Brock.

47. On or about August 14, 2018, Plaintiff went to HR to fill out her third application to get a full-time job.

48. On or about August 17, 2018, Plaintiff walked to the production manager office to talk to Chad Bembrick (GPL), Plaintiff asked him if Plaintiff had been doing well enough to advance to a full-time position.

49. Chad stated "reroll is part time, not fulltime. I do not need any more operators for slitting. I have extrusion, but it is hard, and no one likes it. I don't really have any female jobs open."

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

50. Chad never let Plaintiff try any of the jobs that he said, "weren't female," though other, white, employees had worked these machines.

51. Nevertheless, Plaintiff continued to do her best and be patient.

52. On or about October 3, 2018, Plaintiff was headed to the West building when Brock Jophlin (VSOL) stopped her and asked, "are you IMKO (referring to the temp agency)?"

53. Plaintiff responded yes and that she had been in the position for 10 months.

54. Brock responded, "woah, well we need to get you somewhere."

55. On another occasion, Andre Dial (slitting operator) asked Brock Jophlin what Plaintiff's status was.

56. Brock responded, "she is on the list, but she has to work on her attitude first."

57. Plaintiff went to tell Kevin James that the overtime was wrong, and he skipped Plaintiff, so he decided to just take it completely down instead of putting Plaintiff on there.

58. On or about October 19, 2018, Lana Miller (HR assistant) sent Plaintiff an email about a full-time job and told Plaintiff to go to work on Monday October 22, 2018 at 8:00AM for orientation.

59. Defendant Company hired a lot of males that went in as temps after Plaintiff, they all got promoted to full-time before Plaintiff. For instance, Martin Talbot, Jake Wright, Frank Harter, Rick Smith and several others.

60. On October 22, 2018, Plaintiff got hired full-time as a B shift reroll operator.

61. On or about November 13, 2018, Plaintiff tore a ligament in her wrist and had to wear a brace.

62. Plaintiff showed her doctor what she did at work, and she said that her job played a roll in the pain.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

63. On or about November 14, 2018, Plaintiff's doctor sent a note to Defendant Company letting them know Plaintiff was supposed to do light duty and wear a brace.

64. The doctor originally wanted Plaintiff in a sling, but she knew Plaintiff would not be able to work so she went with the brace.

65. When Plaintiff reported to work, she waited for approximately 4 hours while Brandon Nolan (safety) figured out whether it was okay for Plaintiff to wear a brace on the floor.

66. Brandon checked with Anthony, and then Brandon let Kevin James know Plaintiff could do duties like clean.

67. Defendant Company asked if Plaintiff's medication would affect Plaintiff's performance, to which Plaintiff replied, "no," and started working.

68. On or about November 15, 2018, Plaintiff cleaned all day.

69. On or about November 19, 2018, Plaintiff got called to HR with Audrey and Brandon. Audrey stated, "I just wanted to talk to and get Brandon on the same page since he was gone when all of this occurred."

70. Audrey then said, "we don't have light duty here so you will have to leave and get a release note to come back, we did a temporary thing last week that we probably shouldn't have done but we needed you and we though you would be okay Monday, but you aren't, so you're going to have to get a note from the doctor, if you can't get in before Wednesday then go ahead and start your short-term disability."

71. Plaintiff clocked out at 10:59 and went to the doctor to get a release note because Plaintiff had just gotten hired fulltime and did not have FMLA nor anytime to use.

72. Plaintiff texted Brandon asking for a policy and he said she would have to ask Audrey for it.

73. Plaintiff got released from the doctor at 1:22PM and texted Brandon to let him know.

74. Brandon said he would get ahold of Rich Aubrey (safety lead) to set Plaintiff up with their clinic.

75. Defendant Company scheduled an appointment for Plaintiff for the next day at 9:00AM.

76. On or about November 20, 2018, Plaintiff went to the doctor's office and got released at 10:00AM.

77. When Plaintiff returned to work, she asked Aubrey for the policy and she said to ask Brandon. After some back and forth, they stated that they did not have a policy.

78. Plaintiff got on the computer and found a policy on it.

79. Plaintiff worked from 10:56AM to 2:05AM to get her hours back, which she was forced to miss, and turned around on November 21, 2018 and worked 7AM to 11AM.

80. On or about January 10, 2019, Plaintiff walked into a meeting/focus 5 at 6:58 and it was over.

81. Kevin James snatched the sign in sheet from her hand and said Plaintiff could not sign it because she was late and that was Plaintiff's first "strike."

82. Plaintiff told him he must do it for everyone then, not just for her because there were others that were late, and some didn't even show up.

83. On January 13, 2019, Plaintiff and her coworkers were all in the breakroom eating and everyone got on the reroll bid subject.

84. Lori said, "I think Cameron should get it." Ricky then said, he could because it will be a promotion, but they probably will not give it to him. Lori then replied, that if not, then Dean Moss should.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

85. Lori then attempted to whisper and said, "[Plaintiff] isn't operator material and I don't like a pretty face."

86. On or about January 18, 2019, Brandon Miller went in for overtime and walked in the focus 5 meeting late, yet he was not issued a "strike" like Plaintiff was.

87. On or about January 25, 2019 Plaintiff's job position got posted.

88. On or about January 29, 2019, Plaintiff asked Brock what was behind the posting because nobody had said anything to Plaintiff.

89. Brock said, "well there have been a couple of complaints on the day shift that you are not in a day shift position."

90. However, no one on day shift could sign the bid so no one on days could get it.

91. Also, no one on day shift was qualified for reroll, which is a requirement.

92. Supposedly everyone must start on night shift after being hired full-time, but when Plaintiff was hired, she was hired into the same position where she temped, which happened to be on day shift.

93. Defendant Company never told Plaintiff that she would have to move.

94. Derrick never won a day shift bid but got to stay on B shift packaging.

95. Jacob Wright also got hired on to B shift packaging.

96. On or about February 3, 2019, Plaintiff wore her shoes with a steel cover on them.

97. Lori Triggs asked Plaintiff what happened to her original steel toed shoes, to which she replied that they were in her locker.

98. On or about February 6, Plaintiff went in and her steel toe covers were gone from her locker.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

99. When an employee first starts at Defendant Company, they are warned about two white females that run the company as operators.

100.     On or about February 6, 2019, Plaintiff sat in reroll and watched as Lori Triggs and Nancy pointed at her and laughed as they stopped people to have them sign the bid to get Plaintiff kicked out of her position.

101.     Plaintiff was subjected to that hostile work environment often.

102.     Another operator, Charlie Dike, went and let Plaintiff know that they were stopping people and stopped him to convince him to sign it.

103.     On or about February 15, 2019, Kevin James and Brock Jophlin called Plaintiff into the office and told her that she had to go to the night shift beginning Wednesday, which was D shift.

104.     Additionally, Plaintiff would have to train on nights, which was procedurally E shift.

105.     On or about February 15, 2019, Jeremiah Vassar, Brock, and Plaintiff were in the smokestacks and Plaintiff told Brock she would not work on the A shift because the females are bullies.

106.     Jeremiah agreed with Plaintiff, saying, "yes, Bruce lets them run things."

107.     On or about February 20, 2019, was Plaintiff's first night shift.

108.     On or about February 26, 2019, Defendant Company still had not announced who was taking Plaintiff's reroll position.

109.     On or about March 2, 2019, Rick the maintenance man rubbed up against Plaintiff's butt when she tried walking into the break room.

110.    On or about March 4, 2019 Chira McGaughey was granted light duty while assigned to the same exact machine as Plaintiff. Yet, Plaintiff was told there was no light duty for her.

111.    Chira was allowed to wear a sling at work, her light duty consisted of her sitting in a chair.

112.    On or about March 7, 2019, Plaintiff had to go up front to do a random UA.

113.    The nurse (female) let all the males go use the restroom on their own but insisted on being in the room with Plaintiff.

114.    The males were not watched as they were urinating, even by other male employees.

115.    Defendant Company sent Plaintiff's urine off but handed Plaintiff a sheet with a checked box saying that it was not being sent to the lab.

116.    When Plaintiff started on night shift, they had her start on a new machine called the Atlas.

117.    On or about March 7, 2019, at 5:30AM, Andre Dial and Paul Fix from the training department went to do Plaintiff's first evaluation even though she had only been on the machine for a total of 2 days because Defendant Company kept putting her on reroll instead of letting her train.

118.    No one else in the plant had ever been evaluated that quickly.

119.    On or about April 2, 2019 Chira was **still** on light duty, when Plaintiff was not allowed to be on light duty for more than a week.

120.    On the same date, Brock emailed Plaintiff back saying that she couldn't technically win a job bid for 12 months but that since she was the only one that signed it, he was offering her the core-cutter position.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

121.    Later, Plaintiff went on a break with her headphones on to the smokestack, where at least 8 people were sitting.

122.    These employees signaled to Plaintiff to take off her headphones so that she could hear a story Cory was telling.

123.    Cory spoke about how Jay got a new job.

124.    Jay then said, "guess what? They got me in security and a nigga got a gun too" to which Chira responded, "that nigga stupid."

125.    Everyone began laughing and Plaintiff put her headphones back on and left.

126.    Plaintiff complained and reported that to Jeremiah Vassar and wrote statements to Audrey.

127.    There was then a town hall meeting about word choice.

128.    On or about April 4, 2019, Plaintiff went to the office to discuss the core cutter position.

129.    Plaintiff then talked to Brock and asked if she was taking Dan Fisher's spot-on B shift, since he just won the roundcast.

130.    Brock replied that she would be and asked if she was happy to be returning to days

131.    Plaintiff walked out of the office and Brock called her back in, "I lied actually, you are going to A shift and John Flack (A shift core-cutter) would be coming to B shift."

132.    Plaintiff was told that B shift worked better for John Flack because he had some health issues.

133.    They had never let someone win a bid and then let the opposite shift operator take the bidding shift and the person who won take the other shift.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

134.     On or about April 7, 2019, Plaintiff went to Rick Smith to pull her vacation, but he wouldn't because he said Gary wanted a day.

135.     When Plaintiff moved to core cutter, she was replaced by a white female on the Atlas, **she was allowed to train on days**, yet Plaintiff wasn't.

136.     On or about May 15, 2019, Plaintiff started back on days as a core cutter.

137.     Plaintiff was told that she needed to hurry and learn quickly and qualify so that Defendant Company could get people moved around.

138.     Defendant Company still had not sent any emails out letting the company know her accomplishments, which was general practice. This is usually accompanied by a photo of the Employee and sent plant wide.

139.     On or about May 16, 2019, Plaintiff got called into the office with Kevin James and Henry.

140.     Kevin said Plaintiff needed to change her hat to high visibility and take off her black hat.

141.     Plaintiff refused as no one else had been made to change their hat. Plaintiff also pointed out everyone who should have to change their hat on the floor.

142.     On or about May 21, 2019. Jeremiah was talking to Brock about changing the overtime when Brock said Ricky Roberts could not do core cutting because he is not qualified.

143.     Brock said that no one could touch any line unless they had been qualified on that specific line.

144.     On or about May 23, 2019, Training posted a picture and gave Ricky Roberts a certificate for core cutting, even though he had not been trained.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

145.     On or about May 28, 2019, Plaintiff called corporate to complain about the discrimination she was being subjected to in the workplace.

146.     Plaintiff also sent an email to Matt Cutrone (corporate HR).

147.     Then Plaintiff went to HR and left a note on Audrey's desk.

148.     Audrey never called Plaintiff.

149.     When Plaintiff finally spoke to Aubrey and wrote a statement, Aubrey said, "this ain't even discrimination."

150.     Athenia Parks from the corporate office emailed Plaintiff back to set up a call for Friday morning at 9AM.

151.     On or about June 1, 2019, Plaintiff was at the core cutter when Nancy was talking to Lori and used her head to point at the clock and started talking back and forth.

152.     Plaintiff only worked half of the day that day and Dan Ackerman had worked the beginning of the day and had everything set up for her.

153.     When Plaintiff started, she busted out everything needed before break, then Lori stopped her and told her that she needed cores.

154.     Plaintiff asked her if she had skipped orders because she knew she had done everything that was needed.

155.     So, Plaintiff stayed back from break and cut what Lori wanted, yet Lori never used them.

156.     On or about June 7, 2019, Plaintiff was going back and forth with Bruce and Audrey because Bruce posted for Plaintiff to do packaging overtime and Plaintiff was not qualified in packaging.

157.     There was a white female named Crystal who worked in packaging that should have received the overtime. Instead, she was off all weekend.

158.     White males could trade shifts, while Plaintiff was not allowed to trade off of A shift.

159.     In fact, Brock's response was that they had reasons that **certain "people"** were on certain shifts.

160.     On or about June 20, 2019, Kevin James said that Plaintiff had a meeting at 11:30AM with Brock and Audrey.

161.     It was already out to the plant that Brock Jophlin and Aaron Coon had to resign.

162.     Audrey had emailed Plaintiff and Brock about having a meeting regarding Plaintiff's concerns, to which he never replied.

163.     On Brock's very last day at the plant the meeting took place.

164.     Brock told Plaintiff she could switch to B shift and that Defendant Company never should have kicked her out of the reroll cell and that Plaintiff could volunteer for overtime as much as she wanted in that department.

165.     On or about June 27, 2019, Paul Fix went into reroll and said that he found out about Plaintiff's move to reroll and that she would be moving starting Saturday.

166.     Andre Dial went by to talked to Plaintiff and told her that she got lucky because they didn't want her to work with Jeremiah Vassar.

167.     Defendant Company always had an issue with Plaintiff and Jeremiah conversing because he was the only black male in the whole plant, like Plaintiff being the only female.

168.     Darla had previously placed a complaint saying that they talked too much, and Jeremiah got moved far from Plaintiff.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

169.　　　On or about July 4, 2019, Plaintiff was written up for telling Lori to stop talking about her.

170.　　　Plaintiff did not sign the actual write up, she wrote her own account on the write up and signed her account.

171.　　　An hour later, Lori in retaliation, sent a temp to ask Plaintiff to help him pull trash out of the compactor.

172.　　　Plaintiff told him no because only certain people could do that.

173.　　　On or about August 7, 2019, Paul Fix told Plaintiff that Ron Zirfas was worried about her breaks.

174.　　　Plaintiff was told that she needed to watch her breaks because Paul and Ron "thought" she took longer than a 30-minute lunch.

175.　　　Plaintiff asked if they spoke to everyone else about their breaks, Paul replied that they were not worried about **them**.

176.　　　On or about September 9, 2019, Kevin sent Plaintiff to packaging to cross train.

177.　　　While in packaging, Plaintiff's wrist started to hurt from the manipulators.

178.　　　Plaintiff reported this to Kevin who said he would have maintenance look at them and sent Plaintiff back to work.

179.　　　By the end of the day, Plaintiff's wrist was swollen.

180.　　　On or about September 10, 2019, Kevin sent Plaintiff to packaging. That day Plaintiff wore a brace to see if it would help, but her wrist continued to hurt.

181.　　　Plaintiff reported this to Kevin and around 4PM he took her to Brandon Nolan.

182.　　　Brandon Nolan said that he thought it was just a muscle because it was a new job.

183.    On or about September 11, 2019, Plaintiff went in for overtime reroll but went to packing to have the health lady check on her wrist.

184.    The health lady told Plaintiff that 'yes', the motion would be bad on her wrist.

185.    On or about September 13, 2019, Kevin told Plaintiff to go to packaging, Plaintiff replied that Andre had told her she did not need to worry about training anymore. Additionally, the health lady had recommended she not work there.

186.    On or about September 14, 2019, Kevin called Plaintiff into his office and told her that Greg said that she never gave turnovers and that she needed to.

187.    Around the end of November, everyone must put in their vacation for the following year.

188.    Defendant Company put in all the employees' vacation **except** for Plaintiff's.

189.    When Defendant Company finally put in Plaintiff's vacation it was entered incorrectly.

190.    After a lunch break, Plaintiff went back and found that her machine set-up had been altered.

191.    Plaintiff reported this to Kevin and was yelled at because she "couldn't be found" but Plaintiff was simply in the breakroom, easily locatable.

192.    Plaintiff made a statement to HR about this incident and was told it would be investigated while she was out on vacation and that they would have answers for her when she got back.

193.    Plaintiff got back on January 3, 2020 and within that week Nikki and Ron called Plaintiff into the office to tell Plaintiff to have people write statements supporting how Kevin acts towards Plaintiff and to have them turned in by Wednesday the 8th.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

194.     On or about January 1, 2020, Plaintiff was called into the office by Nikki because someone had reported Plaintiff for being a "threat," yet Plaintiff was the one being picked on, harassed, and discriminated.

195.     On or about January 14, 2020, Ron Zifras went and got Plaintiff and asked if he could follow-up with her concerns.

196.     Plaintiff got to the conference room and Nikki, Ron, and Audrey were there with termination paperwork.

197.     Defendant company said that Plaintiff had "inappropriate conduct towards others."

198.     Defendant Company stated that Plaintiff caused a safety hazard by walking through production without safety glasses on while on her phone as she walked out the door.

199.     Defendant Company never completed their investigation into Kevin.

200.     Plaintiff believes that this "safety violation" which Defendant Company refused to prove, was a pretext and a tool to terminate her based on her perceived disability, sex, and race and in retaliation for complaining about discrimination.

201.     Plaintiff was informed that if she did not leave the premises immediately, **they would call the police**.

202.     Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant Company's conduct.

203.     Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant Company's conduct.

204.     Defendant Company and its managers and other employees actively engaged in discrimination against Plaintiff with malice or in reckless indifference to her right to be free from such discrimination under the MHRA.

## VI. Causes of Action

<u>COUNT I</u>

**<u>DISCRIMINATION BASED UPON DISABILITY/PERCEIVED/REGARDED AS DISABELED AGAINST DEFENDANT COMPANY</u>**

205.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

206.     At the time of the unlawful employment actions, Plaintiff was an individual with a perceived disability and, as such, was a member of the protected group under §213 *et seq*., R.S.MO.

207.     Defendant Company perceived Plaintiff as being disabled and that perception was a motivating factor in the decision to terminate Plaintiff.

208.     At all times alleged herein, Plaintiff was an individual with a disability and was capable of performing the essential functions of her job with or without reasonable accommodations.

209.     At the time these actions were taken by Defendant Company, Defendant Company knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

210.     Defendant Company's actions were unlawful employment practices in violation of the MHRA.

211.     Plaintiff has been damaged by Defendant Company's unlawful employment actions.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

## COUNT II

### RACIAL DISCRIMINATION
### AGAINST DEFENDANT COMPANY

212.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

213.     Defendant Company's actions, as noted above, constituted a pattern and practice of racial discrimination against Plaintiff in violation of the MHRA.

214.     Defendant Company's actions, as noted above, were discriminatory, continuous, arbitrary, and capricious and constituted a disparity in treatment toward Plaintiff as compared to similarly situated individuals who were not Black and, as such, Defendant Compnay's actions were unlawful employment practices in violation of the MHRA.

215.     Defendant Company considered Plaintiff's race as a motivating factor in the decision to treat her disparately, by subjecting her to extra rules and regulations, abusive language, unfair standards, discriminatory references and/or comments, refusing to promote her, being subjected to unwarranted discipline, and ultimately terminating her. Furthermore, Defendant Company failed to provide a workplace free of racially charged comments directed towards Plaintiff.

216.     At the time these actions were taken by Defendant Company, Defendant Company's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff and others to be free from such discrimination.

217.     Defendant Company's actions were unlawful employment practices in violation of the MHRA.

218.     Plaintiff has been damaged by Defendant Company's unlawful employment actions.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

## COUNT III

### RETALIATION
### AGAINST DEFENDANT COMPANY

219.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

220.     Plaintiff hereby alleges claims of retaliation against Defendant Company.

221.     Defendant Company's actions, as noted above, constituted retaliation against Plaintiff in violation of the MHRA.

222.     Plaintiff's actions of complaining of what she believed to be acts in violation of the Missouri Human Rights Act as set forth herein was a motivating factor in the Defendant Company's decision to retaliate against her by treating her differently, subjecting her to a hostile work environment, subjecting her to a heightened level of scrutiny, setting her up to fail, and/or terminating her from her employment with Defendant Company.

223.     At the time these actions were taken, Defendant Company knew that their actions were unlawful, and Defendant Company's actions were undertaken maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

224.     Defendant Company's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of retaliation against the Plaintiff that culminated in his termination.

225.     Plaintiff has been damaged by Defendant Company's unlawful employment actions in violation of the MHRA.

## COUNT IV

### RACIALLY HOSTILE WORK ENVIRONMENT
### AGAINST DEFENDANT COMPANY

226.     Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs and

attached exhibits as if fully set forth herein.

227.     Plaintiff hereby alleges racially hostile work environment against Defendant

Company.

228.     Plaintiff's race (Black) was a contributing factor in Defendant Company's decision

to allow race discrimination and the existence of the aforementioned racially hostile work

environment directed at the Plaintiff.

229.     Defendant Company's actions, as noted above, constituted race discrimination via

the creation and allowed existence of a racially hostile work environment to which Plaintiff

was subjected in violation of the MHRA as Defendant Organization and its supervisors

were aware of the illegal acts of its employees and managers, and did not take action to

stop or prevent the acts that violated the Missouri Human Rights Act.

230.     Defendant Company's actions, as noted above, were discriminatory, continuous,

arbitrary and capricious and constituted a disparity in treatment toward Plaintiff and her

race was a contributing factor in the decision to discriminate against her and to allow the

creation and fostering of a racially hostile work environment to which Plaintiff was

subjected.

231.     At the time these actions were taken by Defendant Company, Defendant Company

knew that these actions were unlawful and Defendant Company's action were undertaken

maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

232.     Plaintiff has been damaged by Defendant Company's unlawful employment

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

actions.

## COUNT V

## SEX/GENDER DISCRIMINATION
## AGAINST DEFENDANT COMPANY

233.  Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

234.  Plaintiff is an individual subject to the protection of the MHRA based upon the fact that she is a female and therefore a member of a protected class.

235.  Defendants' actions, as noted above, constituted a pattern and/or practice of sex/gender discrimination against Plaintiff in violation of the MHRA.

236.  Defendants' actions, as noted above, were discriminatory, continuous, arbitrary, and capricious, and were unlawful employment practices in violation of the MHRA.

237.  Based upon the foregoing, Plaintiff's sex/gender was a motivating factor in Defendants' decision to treat her differently than her similarly situated male co-workers by not giving her a full time job, giving her a "strike" when men were not given a "strike" for the same actions, subjecting her to different rules and standards, subjecting her to extra duties, subjecting her to a heightened level of scrutiny, setting her up to fail, and more as has been previously alleged in all previous paragraphs set forth herein, and ultimately terminating her.

238.  At the time these actions were taken by Defendant Company, Defendant Company knew these action were unlawful.

239.  Defendant's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of discrimination

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

against the Plaintiff that culminated in her disparate treatment and/or her termination from employment.

240.     Defendants' actions were unlawful employment practices in violation of the MHRA.

241.     Plaintiff has been damaged by Defendants' unlawful employment actions.

## VII. Prayer for Relief

242.     Wherefore, Plaintiff prays that this Court:

    a.  declare the conduct engaged in by Defendant Sealed Air Cryovac, Inc. a/k/a Sealed Air to be in violation of Plaintiff's rights;

    b.  enjoin Defendant Sealed Air Cryovac, Inc. a/k/a Sealed Air, and its managers/supervisors from engaging in such conduct;

    c.  restore Plaintiff to her rightful position with Sealed Air Cryovac, Inc., or, in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

    d.  award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period or front salary and benefits accrual;

    e.  award Plaintiff compensatory, punitive and liquidated damages against Defendant Company;

    f.  award Plaintiff damages for emotional pain and suffering;

    g.  award Plaintiff her costs and attorneys' fees; and

    h.  grant such other relief as it may deem just and proper.

Electronically Filed - Buchanan - August 24, 2020 - 11:54 AM

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

Respectfully submitted,

By: /s/ *Robin Koogler*
    Kevin Baldwin, MO Bar No. #49101
    Eric Vernon, MO Bar No. #47007
    Sylvia Hernandez, MO Bar No. #70670
    Robin Koogler, MO Bar No. #71979
    **BALDWIN & VERNON**
    108 S Pleasant St.
    Independence, MO 64050
    Tel: (816) 842-1102
    Fax (816) 842-1104
    Kevin@bvalaw.net
    Eric@bvalaw.net
    Sylvia@bvalaw.net
    Robin@bvalaw.net
    ATTORNEYS FOR PLAINTIFF